# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KOTTS CAPITAL HOLDINGS LIMITED PARTNERSHIP, and KOTTS CAPITAL HOLDINGS, INC., ) ) ) ) Plaintiffs, ) ) v. ) ) RONALD F. PREBISH, JOHN BARRY, ) KRIS E. WEGNER, and WAYNE WEHBER ) ) Defendants. | No. 10 C 05532 Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Kotts Capital Holdings LP and Inc (collectively 'Kotts') have filed this suit against Prebish, Barry, Wegner, and Wehber ('the Managers') to compel the Managers to participate in JAMS arbitration. R. 28 ¶ 22.[1] Kotts filed this declaratory judgment action on September 1, 2010. R. 1. The Managers too filed a declaratory judgment action, but in the Circuit Court of Cook County, Illinois, on August 25, 2010, R. 24, Exh. B at 15, and Kotts, the defendants in that action, removed it to this Court. R. 24, Exh. B at 2-4. On December 28, 2010, the Court consolidated the two actions on relatedness grounds. R. 27. The consolidation was conditioned on the removal of one of the managers, Rohit Arora, from both cases because he deprived the Court of subject matter jurisdiction. *Id.*[2] Arora was removed from the litigation with the consolidation

---

[1] Citation to the docket is "R." followed by the docket entry.

[2] According to the Managers, Arora is a United States citizen, but not a citizen of any state. R. 14 at 1. When Arora was removed from the case, complete diversity was satisfied, and because the amount in controversy exceeds $75,000, R. 28 ¶¶ 1-7, the Court has jurisdiction

of the two actions, R. 27, followed by an amended complaint by Kotts, which described itself as the first amended complaint and "terminating Rohit Arora." R. 28. Thus, that filing fulfilled the Court's order, R. 27, to remove Arora from both cases. The amended complaint and answer replaced the pleadings from both cases. The Managers' answer did not include a counterclaim seeking a declaration that auditor-resolution is the appropriate forum of dispute resolution. R. 29. At this point, the parties agree on all of the material facts. *Compare* R. 28 *with* R. 29. The parties disagree as to what legal conclusion flows from the facts, and have filed cross motions for judgment on the pleadings.

## I.

The parties' dispute has its genesis in the winding down of Vilter Investments LLC. R. 28 ¶ 14. Vilter Investments was formed in December 2004 for the purpose of acquiring and owning 100% of Vilter Manufacturing LLC, a manufacturer of compression equipment. *Id.* ¶ 9. All of the parties have an ownership stake in Vilter Investments. *Id.* ¶ 10. Defendants, the 'Managers,' were part of the Vilter Manufacturing management, and purchased an ownership interest in Vilter Investments. *Id.* ¶ 11. When the LLC was formed, the parties signed an LLC agreement, R. 44, Exh. 1, to govern operation of the LLC. R. 28 ¶ 13. In 2009, Vilter Manufacturing was sold to a third party, and most of the sales proceeds were distributed to the members of Vilter Investments–the remaining proceeds are being

under 28 U.S.C. § 1332.

held in escrow. *Id.* ¶ 14. The escrow funds are in place to cover certain indemnification responsibilities of Vilter Investments, and to be distributed once the 'Final Distribution Allocation' has been calculated. R. 29 ¶ 14. In connection with the sale, the parties entered into an agreement regarding indemnification. R. 28 ¶ 15.

The underlying dispute that needs resolution–not by this Court, but by *some other procedure*–stems from a provision in the LLC agreement to compensate members for income tax they paid on profits from Vilter Investments. *Id.* ¶¶ 16-17. Section 4.2 of the LLC agreement provided for occasional cash distributions to the members to cover tax liability incurred due to the profits of Vilter Manufacturing, which flowed to Vilter Investments, and then to the LLC members. *Id.* ¶ 18. The tax distributions were to be "treated as advances of amounts to be distributed under [Section 4.1] in the future." R. 44, Exh. 1, 29. Section 4.1 set forth a program for distributing available cash in accordance with the priority of the members' ownership, and interacts with the "preferred returns" and "capital accounts" of the members. *Id.* at 28-29.[3] Given this distribution framework, the question is: how did these tax distributions affect the capital accounts and preferred returns of the parties? Kotts argues that these tax distributions are not returns of capital and do not reduce the capital accounts or preferred returns. *Id.* ¶ 19. The Managers disagree. R. 28 ¶ 20; R. 29 ¶ 20. The reason for the dispute is simple: the distribution of the escrow proceeds is determined, in part, by the value of the members' preferred returns and capital accounts. R. 28 ¶ 21; R. 39,

---

[3]For purposes of this opinion, the Court need not go in to any further detail regarding how distribution shares are calculated.

3

8-9. The parties are not asking the Court to resolve how to treat those distributions, but instead, the parties ask the Court to decide the proper forum to resolve the tax-distribution issue. *Id.* ¶ 29.

There are dueling contract provisions at issue. The LLC agreement provides in section 10.16 that "any dispute as to the interpretation or application of this Agreement [be submitted] to final and binding arbitration to JAMS or End-Dispute." *Id.* ¶ 22. The indemnification agreement provides that, if the parties cannot agree on "the Final Distribution Allocation" provided for in Section 9.2 of the LLC agreement, the parties "shall mutually select an independent accounting firm of recognized standing. . . to determine" the final allocation of proceeds (the 'auditor-resolution' method). R. 31, Exh. 5, 3. Further, the indemnification agreement provides that the auditor-resolution method "shall be used to determine" the final allocation of proceeds "in lieu of the JAMS arbitration provided in [the LLC agreement]." *Id.* The parties have filed statements with the Court asking it to resolve the issue of the proper forum by looking only to the pleadings, agreements, and the briefs. R. 40; R. 41.

## II.

Federal Rule of Civil Procedure 12(c) allows for the filing of a motion for judgment on the pleadings at any time after the pleadings are closed. A motion for judgment on the pleadings can be used to dispose of the case based upon the underlying substantive merits. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). When Rule 12(c) is used to determine the merits of the case, all of the non-

4

moving party's well-pleaded allegations are taken as true,[4] and all facts and inferences are viewed in the light most favorable to the non-moving party. *Id; Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 177 n. 2 (7th Cir. 1986). Because a Rule 12(c) motion is akin to a motion for summary judgment when used as it is here, judgment on the pleadings will not be granted unless no genuine issues of material fact remain to be resolved and unless the moving party is entitled to judgment as a matter of law. *Alexander*, 994 F.2d at 336.

## III.

From the outset, it is worth repeating that there is no issue of material fact, and no inferences that need to be drawn. The parties have stipulated that both agreements are valid and enforceable, and they agree on the material facts. What is left to determine is the legal consequence of these facts. After reviewing and interpreting[5] the operative agreements and the arguments of the parties, the Court holds that the parties agreed to resolve the dispute at issue under the auditor method of resolution.

---

[4]The Court may consider documents which have been incorporated into the pleadings by reference. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

[5]It is well established that a federal court sitting in diversity, as this Court is, must apply state law to adjudicate the controversy. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). What has *not* been established in this case is *which* State's law is applicable here to guide the Court's interpretation of the agreements. The indemnification agreement provides that the "validity, interpretation, construction and enforcement of this Agreement shall be governed and controlled by the laws of [Wisconsin]." R. 44, Exh. 3, 7. The LLC agreement provides that the agreement "shall be construed and enforced in accordance with and governed by the laws of the State of Nevada without regard to the choice of law provisions thereof." R. 44, Exh. 1, 54. Kotts cites Illinois, and no other State's, law in support of its motion. R. 44, 7. The Managers rely on no legal authority to support their position. R. 49. Ultimately, the choice of law is immaterial because the Court applies the plain language of the contracts.

5

Kotts argues that the auditor-resolution provision of the indemnification agreement relates only to a very narrow set of disputes. R. 44 at 3. As Kotts puts it, "only [those] disputes between the parties over the numbers – i.e., differences of opinion over the calculation of member distributions that could be resolved by an accountant's review and verification of the figures entered in the accounting records." R. 44 at 3-4. Section 9.2 of the LLC agreement, discussing winding up of the LLC provides in part that the balance left over from a winding down of the LLC should be paid out "to the Members in accordance with the terms of [Section 4.1], after giving effect to all contributions, distributions, and allocations for all periods." R. 44, Exh. 1 at 51. Kotts argues that the auditor has no role, because the auditor must "give effect" to all distributions, but the "effect" to be given to distributions must first be determined by JAMS. R. 44 at 3-4. Kotts does not dispute that the tax-distribution issue has a direct impact on the final distribution of the proceeds from the sale of Vilter Manufacturing. *Id.* at 5.

In support of their position, the Managers rely on the relationship between the underlying tax-distribution dispute and the final allocation of the proceeds. R. 39 at 15-16. According to the Managers, it is a "self-evident fact that the Members' dispute over the proper treatment of the Tax Distributions is central to the allocation of the remaining sale proceeds . . . ."*Id.* Because the resolution of the tax-distribution dispute directly impacts and determines the final allocation, the Managers argue, resolution of the tax-distribution dispute falls within the boundaries of auditor-resolution. *Id.* at 16.

6

As noted earlier, the parties have agreed to confine the Court's analysis of the situation to the pleadings, operative agreements, and arguments of counsel. Also, as noted in an earlier footnote, the parties do not rely on any particular State's law to reach their respective conclusions—relying instead on arguments of logic and common sense from the plain language of the agreements. After reviewing the procedures outlined in the agreements and articulated through the parties' pleadings and arguments, the proper forum for resolving the tax dispute is the auditor-resolution process established in the indemnification agreement, which explicitly supplants JAMS arbitration.

Kotts's argument in favor of a narrow interpretation of the indemnification agreement fails for two reasons. First, the explicit terms of the indemnification agreement both contemplate and resolve overlap between the JAMS and auditor-resolution procedures. The indemnification agreement provides that the auditor-resolution procedure "shall be used to determine the Final Distribution Allocation *in lieu of the JAMS arbitration*." R. 31, Exh. 5 at 3 (emphasis added). The indemnification agreement recognizes that some matters that would previously have been resolved under JAMS arbitration, were it not for the indemnification agreement, would now be resolved by the auditor-resolution process. Thus, Kotts's argument that the auditor's intended role was extremely limited—a glorified calculator, used solely to rectify disputes in the calculation of the numbers—is contradicted by the indemnification agreement's contemplation of overlap.

Second, the context in which the indemnification agreement was executed further supports the Managers' position. The indemnification agreement was executed because the LLC was winding down. The vast majority of the proceeds from the sale of Vilter Manufacturing had been distributed without contest. Although the remaining amount of money at issue is not pocket change—anywhere between $800,000 and $1,600,000 depending on which party one asks, R. 29 ¶ 20—these disputed funds are the dregs of a much larger transaction and winding down. Thus, the auditor-resolution process will not be responsible for disposing of the LLC's total assets. Given this context, it is not surprising that the parties would choose a more streamlined, final method of dispute resolution to address remaining concerns over relatively small amounts. The indemnification agreement evidenced and laid out the terms of the end of the LLC. It is not unreasonable that the indemnification agreement would also replace the winding-down LLC's method of dispute resolution.

The Managers' interpretation of the agreements best conforms with the plain language of the agreements and the context in which the agreements were executed. Accordingly, Kotts's motion for judgment on the pleadings is denied and the Managers' motion is granted.

One final procedural matter remains. This holding is a denial of Kotts's requested declaration, but it does not grant a declaration in the Managers' favor. Although the Managers' original complaint in the companion case requested a declaratory judgment in their favor, 10 C 6149, R. 1 ¶ 25, that complaint is no longer operative in the present case because, after consolidation, the parties filed amended

8

pleadings, R. 28 and R. 29. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-1205 (7th Cir. 1998) (citing other Seventh Circuit cases and holding that the amended pleading supersedes the original pleading). Thus, because the Managers did not reassert their request for a declaratory judgment via a counterclaim, the Court is limited to entering judgment in favor of the Managers. Of course, this judgment in favor of the Managers would almost surely have preclusive effect were Kotts again to resist the auditor-resolution procedure.

## IV.

For the reasons stated above, the Managers' motion for judgment on the pleadings is granted, Kotts' motion for judgment on the pleadings is denied. Judgment is entered for the Managers, and Kotts' amended complaint is dismissed.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: July 1, 2011